### JOSEPH H. BASS *vs.* JEREMIAH O'BRIEN & others.

A bill of exchange containing a direction to " charge the same to account of disbursements of barque Dublin," and signed by the master of the vessel in his own name, without addition, does not bind the owners.

In an action against the owners of a vessel for disbursements made for her in a foreign port, an answer which does not deny that the defendants are owners or that the disbursements were necessary, but alleges that they were made on the account and credit of the charterer and not of the defendants, does not establish a *prima facie* case for the plaintiff, but leaves the burden of proof upon him to show that the disbursements were made on the account and credit of the defendants.

In an action against the owners of a vessel for disbursements made for her in a foreign port, in which the defendants alleged that they were made on the account and credit of the charterer, the judge instructed the jury that there was nothing incompatible in the plaintiff's acting as the charterer's agent in attending to the freight and procuring a cargo, and still refusing to make disbursements on his credit and looking to the vessel; that notwithstanding an agreement of the charterer to advance funds to the master, communicated to the plaintiff, the master might pledge the credit of the owners for these disbursements; that the burden of proof was on the defendants to show on the whole evidence that they were made on the credit of another person; and that it depended on the agreement express or implied from all the evidence, and was a question of fact for the jury. *Held*, that the plaintiff had no ground of exception.

ACTION OF CONTRACT against the owners of the barque Dublin on an account annexed for disbursements for towage, pilotage, and other charges and expenses at New Orleans; and also on the following bill of exchange, signed by the master:

" Exchange for $1709.69.   New Orleans, February 23, 1856.

" Thirty days after sight of this first of exchange (second unpaid) pay to the order of J. H. Bass seventeen hundred and nine 69-100 dollars, value received, and charge the same to account of disbursements of barque Dublin.

" Yours respectfully,     James Peterson.
" Messrs. Silloway, Calef & Co., Boston "

The defendants in their answer admitted that Peterson signed the bill of exchange, but denied that it bound them or that he had authority to bind them; set out a charter party dated at Boston December 14th 1853, by which Peterson, as master and agent, chartered the Dublin to Silloway, Calef & Co., for a voy age to New Orleans and back, and the owners were to man apparel and provision her, and the charterers to pay "three thousand dollars, the round sum for the voyage, together with all port charges at New Orleans, including lighterage, pilotage and towages; charter payable as follows, viz.: the captain to have what money he requires for the ordinary disbursements at New Orleans; balance of freight payable on discharge of the cargo at Boston;" and alleged that Silloway, Calef & Co. consigned the barque to the plaintiff in New Orleans, as their agent and correspondent; that the plaintiff advanced the sums mentioned in his account, as agent and on the credit and account of the charterers; and so collected the outward freight from Boston, or part thereof, or proceeds of certain damaged articles, and deducted the same from the amount of his disbursements, leaving the amount (after adding commissions and exchange) of said bill of exchange, which was drawn as a memorandum only of the balance of amount of said disbursements; and the defendants denied that the payments and services were for them.

At the trial in the superior court of Suffolk at March term 1857, *Nash*, J. ruled that the defendants were not liable upon the bill of exchange.

The defendants admitting themselves owners, the plaintiff then requested the court to rule that upon the pleadings and admissions, the plaintiff had established a *prima facie* case, and the burden was upon the defendants to disprove their liability. But the court declined so to rule.

The plaintiff then introduced evidence tending to show that the disbursements and services, mentioned in his account, were made and rendered at the request of the master, and on account and credit of the owners; that he did not act as agent or correspondent of the charterers therein; that he collected the freight and made the deductions therefrom in consultation with

and for the master; that he made the charges on his books, and drew out and forwarded to the charterers a bill thereof, against " the barque Dublin and owners "; that the captain was shown his account and approved thereof, and, as agent and in behalf of the owners, drew the bill of exchange, as was the custom of the plaintiff to have done; and that the plaintiff never looked to the charterers, but in this, as in all cases, relied upon the vessel.

The defendants introduced evidence tending to show that the charterers forwarded to the plaintiff a copy of the charter party; that the plaintiff was their agent and correspondent, and took entire charge of the vessel on her arrival at New Orleans; collected and adjusted the freight; negotiated with the master in behalf of the charterers for a surrender of the charter party, and procured the return cargo in behalf of the charterers, and charged commissions therefor; that the master had nothing to do with the collection of freight, except in the case of certain damaged articles, for which he settled himself, and was not consulted as to the same or the return freight; that the captain did not act or pretend to act for the owners, but, on the other hand, supposed and expressly informed the plaintiff that the advances were to be made under and in pursuance of the stipulation of the charter party; that the master signed the bill of exchange under the plaintiff's threat to libel and detain the vessel, and not as approving the same; that the account, though made out against the owners, was never forwarded to them, but to the charterers; and that, according to previous custom between the charterers and plaintiff, the commissions as charged were to be divided between them.

The plaintiff requested the court to instruct the jury, " that the plaintiff is entitled to recover for the full amount of his disbursements against the owners;" and also " that the defendants being liable, in the first instance, under the charter party, as a matter of law, for all the ordinary, and of course for all the extraordinary, disbursements at New Orleans, they are liable to the plaintiff upon his aforesaid account, unless they shall satisfy the jury of the truth of both these propositions: 1st, that the plaintiff made these disbursements upon the credit of another,

without any intention of resorting to the owners, and 2d, that the plaintiff has been guilty of such delay, in calling upon the owners, as has subjected them to loss and inconvenience ; " and " that the defendants are liable to the plaintiff upon his account, unless they can satisfy the jury, the burden of proof being on them, that the plaintiff made an express contract with the owners not to look to them in any event; and that the charter party being *res inter alios,* so far as the parties to this action are concerned, does not prove, and has no tendency to prove, such a contract."

The court, declining so to rule, gave the following instructions among others to the jury: " That by the charter party the owners still retain the control of the vessel, and the captain was their, and not the charterers', agent, and had authority to bind the owners for these disbursements; that, nothing further appearing, it was incumbent on, and the burden of proof was on the defendants to show that they were made on the credit of some other person ; that by the charter party the charterers had stipulated and were bound to put the master in funds at New Orleans, for the ordinary disbursements of the vessel; and it was competent for them to do this through the plaintiff, as their correspondent or agent in New Orleans ; that there was nothing incompatible in the plaintiff's acting as the charterers' agent in attending to the freight and procuring a return cargo, and still refusing to make these disbursements on their credit, and acting as a stranger and looking solely to the vessel; that, notwithstanding the charterers' agreement to advance funds to the master, communicated to the plaintiff, it was competent for the master to pledge the credit of the owners for these disbursements ; that on the plaintiff's evidence the owners were primarily liable, and the burden was on the defendants to show, on the whole evidence, that they were made on the credit of another person; that it depended on what was the agreement, express or implied, from all the evidence and circumstances, and was a question of fact for the jury ; that if the plaintiff made these disbursements at the request of the captain, acting for the owners, or on the credit of the vessel and owners, or as disburs-

ing agent of the barque, in behalf of the owners, then the verdict should be for the plaintiff; but if the plaintiff made these disbursements as the correspondent and agent of the charterers, and on their credit or in their behalf, to carry out the stipulation of the charter as to advance funds, and on their credit; then the verdict should be for the defendants; and, in determining this question of fact, it was competent for the jury to consider all the evidence in the case, including the charter party, if communicated to the plaintiff." The jury returned a verdict for the defendants, and the plaintiff alleged exceptions.

*H. W. Paine & E. A. Dana,* for the plaintiff.

*C. E. Pike,* for the defendants.

BIGELOW, J. 1. The owners of the vessel were clearly not liable as drawers of the draft. It does not purport on its face to bind them. Peterson did not sign it as master, or as agent for the owners, nor otherwise indicate that he drew it in a representative capacity. The direction to charge the amount to the disbursements of the barque Dublin was only a designation of the account to which the payment was to be debited when the draft was taken up by the drawees, but did not in any way disclose the persons who were ultimately responsible for such disbursements. The rule is well settled that when an agent signs negotiable paper in his own name, without disclosing his principal, the agent only is liable, and evidence *dehors* the instrument cannot be resorted to for the purpose of showing that it was given for or on account of some other person. Whoever takes negotiable paper enters into a contract with the parties who appear on the face of the instrument, and cannot look to other persons for payment. *Fuller* v. *Hooper,* 3 Gray, 341. *Bank of British North America* v. *Hooper,* 5 Gray, 567.

2. The pleadings did not show any admission on which the defendants could be charged for the articles enumerated, or for the service and payments included in the account annexed. The whole answer of the defendants is to be taken together. It is true they did not deny that they were owners of the vessel, nor that the items charged were suitable and necessary disbursements for the vessel while at New Orleans, but they distinctly

averred that they were furnished by the plaintiff, not on the credit of the defendants, but for and on account of the charterers of the vessel, who were alone liable therefor.    This raised a distinct issue, the burden of proving which was on the plaintiff. It was not an allegation of matter in discharge or avoidance of the cause of action, but a denial of any liability on the part of the defendants.    The ruling on this point was correct.

3. We can see no error in the instructions.    They submitted with clearness and accuracy to the jury the true issue between the parties, which was a pure question of fact.    If the plaintiff supplied the vessel, and made payments on her account on the credit of the charterers, he can look only to them for payment. There could be in such case no contract, either express or implied, with the owners.                        *Exceptions overruled*